FORUM INV. CO. et al. v. CEMENT STAVE SILO CO. et al.

(Circuit Court of Appeals, Eighth Circuit. December 7, 1914.)

No. 4151.

PATENTS ⬅196—ASSIGNMENT—VALIDITY—CONSIDERATION.

An instrument under seal and duly recorded in the Patent Office, by which a patentee assigned all his rights under the patent in certain states for the expressed consideration of a sum in hand paid, receipt of which was acknowledged, and a royalty to be paid on the articles manufactured, binds the assignee who accepted the same to pay the consideration stated, and it is not void for want of consideration, nor invalid to pass title to the patent as against a subsequent licensee of the assignor, because the cash payment named therein was not in fact made.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 275–280; Dec. Dig. ⬅196.

Agreements to assign patents, see note to Paine v. Parkhurst, 126 C. C. A. 200.]

Appeal from the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Suit by the Forum Investment Company, the American Cement Stave Silo Company, and J. Emil Nelson against the Cement Stave Silo Company, Sterling T. Playford, and L. H. Paul. Decree for defendants, and complainants appeal. Reversed.

John E. Stryker, of St. Paul, Minn. (W. H. Williams, of St. Paul, Minn., on the brief), for appellants.

J. R. Orwig and J. M. Parsons, both of Des Moines, Iowa (Orwig & Bair, and Parsons & Mills, all of Des Moines, Iowa, on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and REED, District Judge.

REED, District Judge. The Forum Investment Company, the American Cement Stave Silo Company, Minnesota corporations, and J. Emil Nelson, a citizen of Minnesota, sued the Cement Stave Silo Company, an Iowa corporation, Sterling T. Playford, a citizen of Illinois, and L. H. Paul, a citizen of Iowa, for alleged infringements of letters patent No. 850,048, issued to the defendant Sterling T. Playford, April 9, 1907, for building blocks used in the construction of buildings, cement silos, tanks, culverts, and other similar structures, and for an injunction and accounting of damages. The suit was dismissed by the plaintiffs as to the defendant Paul, and upon a hearing a decree went in favor of the other defendants, dismissing the bill at plaintiffs' costs, but without determining the validity or invalidity of the patent, and the plaintiffs appeal.

The validity of the patent is not challenged, and the defendants admit that the defendant Cement Stave Silo Company has made and sold the patented article in the territory described in the bill, and that such sales, if unauthorized, would be in legal effect an infringement of the patent, but claim that it had the prior right to do so under contract with the defendant Playford. The contest, therefore, is over the ownership of the patent, or which of the parties has the prior or better right to make, sell and use the patented device. The contracts relating to the patent, and the asignment thereof, or of some interest therein, under which the respective parties claim, in the order of their dates, are:

(1) December 24, 1909, Playford assigned to J. A. Giantvalley, of St. Paul, Minn., all rights under the patent (except in the states of Michigan, Indiana, and Ohio) for a consideration of $500, receipt of which is acknowledged. Giantvalley also agreed to form a stock company to manufacture the patented article and pay to Playford a royalty of two cents for each stave manufactured and sold by him or the company which he was to organize.

(2) January 28, 1911, Playford made a written contract with the plaintiff J. Emil Nelson to sell and assign to him all his rights under the patent in certain states named, for a specified royalty of two cents a stave, to be paid by Nelson to Playford upon the number of staves or blocks made or sold under the patent by Nelson in each year.

(3) November 10, 1911, defendant Playford and one W. J. Rammer, as parties of the first part, made a contract with L. H. Paul and F. Henderson, of Des Moines, Iowa, as parties of the second part, whereby the first parties gave to the second parties the exclusive right to manufacture and sell a certain "steel angle iron frame machine," in all states west of the Mississippi river and north of Texas, for which ma-

chine (it is stated in the contract) patents are pending and controlled by the first parties and used for making the Playford cement staves. Second parties to 'pay first parties a royalty of $10 on every machine sold. This agreement was signed and acknowledged by the parties thereto and recorded in the United States Patent Office July 15, 1912.

(4) December 27, 1911, Giantvalley reassigned to Playford all his rights under the assignment of Playford to him of December 24, 1909, which assignment was duly acknowledged by Giantvalley and recorded in the United States Patent Office, January 2, 1912.

(5) December 29, 1911, defendant Playford and plaintiff Nelson entered into a written agreement, the pertinent parts of which are:

#### Grant.

Whereas, I Sterling T. Playford, * * * on April 9, 1907, did obtain letters patent of the United States, No. 850,048, for improvement in cement "staves" or blocks, * * * and am now the sole owner of said patent and of all rights under the same; and whereas, J. Emil Nelson, of Willmar, Minnesota, is desirous of acquiring an interest in the same:

Now, therefore, * * * be it known that for and in consideration of five hundred dollars to me in hand paid, the receipt of which is hereby acknowledged, and for the further consideration of a royalty of one cent per stave to be paid by Nelson as long as the production is less than 50,000 staves a year, and one-half of one per cent. in excess of such amount to be paid by said Nelson in each year, I, the said Sterling T. Playford, have sold, assigned, transferred, and by these presents do sell, assign, and transfer, unto said J. Emil Nelson all the right, title, and interest in and to said invention as secured by said letters patent in the states [naming them, including Minnesota and Iowa], the same to be held and enjoyed by the said J. Emil Nelson within and throughout said territory, but nowhere else, for the full term for which said letters patent are granted. * * *

It is also understood and agreed that said second party, his assigns or legal representatives, shall have the right to manufacture, sell, and use a certain machine invented by the party of the first part for making said cement staves, or if he should so demand, the first party agrees to furnish the said second party, his assigns or legal representatives, with machines with all improvements used by, himself, at a price which shall not exceed that of the lowest quotation for making same that can be gotten.

It is also agreed that the party of the first part shall give his services, aid, and assistance in all possible ways for three months each year for three years, said service to be given when needed and demanded, at five dollars per day and necessary expenses, figured from his home. * * *

Which agreement was duly signed and acknowledged by Playford, and, together with the reassignment of Giantvalley to him, mailed by the parties to the United States Patent Office December 29, 1911, and duly recorded therein January 2, 1912.

(6) February 14, 1912, the defendant Playford and W. J. Rammer entered into an agreement with the defendant Cement Stave Silo Company, whereby they granted to said company the exclusive right to manufacture, sell, and use throughout the United States, except certain parts of Illinois, a certain machine to be known as a steel angle iron frame machine with self-cleaning mold for making the Playford patent cement staves described in letters patent No. 850,048, for which machine it is stated in the agreement they had applied for a patent under serial No. 866,928; said Playford and Rammer agreeing to proceed at once to procure the aforementioned patent to be al-

lowed as soon as possible at their own expense. They further agree that they will license and empower said Cement Stave Silo Company to manufacture, lease, use, and sell such machine 'so' to be patented throughout the entire United States, except certain designated parts of Illinois; and also the exclusive right to manufacture, use, sell, or lease all staves or blocks to be manufactured and made under .the aforesaid patent (No. 850,048) within said territory, subject, however, to all outstanding contracts made by the first parties with certain persons (naming them) and J. Emil Nelson for the manufacture, sale, lease, and use of such staves or patent rights. The Cement Stave Silo Company agrees to protect said Playford as to the contracts or assignments known and referred to as the Nelson contract, saving and protecting him in every manner and form, with the express understanding and agreement that said first parties (Playford and Rammer) are to furnish all necessary assistance within their power, but not at their expense, to defeat any litigation that may arise in relation thereto, either between themselves and said Nelson, or the said company and said Nelson. It is also agreed that said first parties will "protect said second parties in their rights under said patent in their territory, except that covered by the Nelson contract and that territory reserved herein. * * *" Which agreement was duly filed and recorded in the United States Patent Office July 15, 1912.

The corporate plaintiffs, the Forum Investment Company and the American Cement Stave Silo Company, have acquired interests in the Playford patent, No. 850,048, by assignment from J. Emil Nelson of the grant to him by Playford of December 29, 1911 (No. 5 of the contracts above mentioned). The right of the American Cement Stave Silo Company is subject or inferior to the rights of the Forum Investment Company. The corporate defendant, the Cement Stave Silo Company, has acquired whatever right it has in the Playford patent by assignment from Paul and Henderson of their agreement with Playford and Rammer of November 10, 1911, and its agreement with Playford and Rammer of February 14, 1912 (Nos. 3 and 6 of the contracts above mentioned).

The defendants admit that Playford made to Nelson the grant of December 29, 1911, but aver that the same was without consideration to Playford and was obtained from him by the fraud of Nelson. The plaintiffs deny this, and also allege that the defendant Cement Stave Silo Company acquired no rights in the Playford patent under the contract of November 10, 1911, or the contract of February 14, 1912: (1) Because the subject-matter of the contract of November 10th is an unpatented machine only for making the staves covered by the Playford patent No. 850,048, and does not cover that patent, nor the cement staves covered thereby; (2) that when the contract of February 14, 1912, was made said defendant had full notice of the assignment or grant of Playford to Nelson of December 29, 1911, and it is expressly made subject to the Nelson contract.

The want of consideration to Playford for the assignment or grant of December 29, 1911, rests upon the alleged ground that the $500, mentioned in this assignment as part of the consideration thereof, was

never in fact paid by Nelson to Playford (though the receipt thereof is acknowledged by Playford in the contract). That the contract expresses a consideration is not disputed, and being in writing and under seal is presumptively valid. Nelson admits in his testimony that the $500, and the royalties to be paid by him as mentioned, were not paid by him in cash when the contract was made; but he claims that Playford was then owing him more than the amount of these two sums when the contract was made. He bases this claim upon the following grounds, viz.: That subsequent to the assignment of Playford to Giantvalley of December 4, 1909 (No. 1 of the contracts above mentioned), Giantvalley assigned to him (Nelson) an interest in that contract; that a corporation was then organized by Giantvalley under the laws of Arizona, known as the American Manufacturing Company, of which Nelson was president, for making the cement staves covered by the Playford patent; that some time in 1910 this corporation made certain cement staves or blocks according to the Playford patent No. 850,048, and that Nelson and Giantvalley, with the assistance of Playford, constructed certain silos therefrom, one of which was on the State Agricultural Farm near St. Paul, Minn., and one upon the State Fair Grounds near that city. These silos for some reason proved to be defective and practically worthless. The one on the State Fair Grounds was examined by a large number of visitors at the fair in 1910, and it was claimed by Nelson and Giantvalley that the worthless silos worked a great damage to them, in that they ruined the sale of the cement staves covered by the Playford patent, and Nelson at least claimed that Playford was liable for such damages, and responsible to him therefor. Upon the merits of such claim we express no opinion; but out of this controversy or dispute arose the contract of January 28, 1911 (No. 2 of the contracts above mentioned). That contract in terms provides:

"It is hereby agreed by and between Sterling T. Playford, party of the first part, and J. Emil Nelson, party of the second part: That for the consideration hereinafter expressed the party of the first part will sell and assign all rights under patent No. 850,048, and any and all improvements on the same, relating to the manufacture and sale of cement staves in the states [naming them, and including Minnesota, Iowa, Nebraska, Wisconsin, and others], subject to adverse rights. That as a consideration for said sale and assignment the second party agrees to pay the party of the first part a royalty of one cent per stave on the first fifty thousand staves made and sold each year, and on all staves made and sold above that number a royalty of one-half cent shall be paid. As a further consideration, the party of the second part agrees to procure a release to party of the first part from any and all rights under the said patent held by the party of the second part, the American Manufacturing Corporation, and the J. Emil Nelson Corporation. All accounts, claims, and royalties to date existing or claimed by or against either of the parties hereto or by one of the parties against the other, and any accounts or claims by the party of the first part against the party of the second part, the American Manufacturing Corporation, and the J. Emil Nelson Corporation are hereby canceled. That the party of the first part hereby agrees to assume and does assume any and all liability for royalty and rights held or claimed by W. J. Rammer, his assigns or legal representatives, against party of the second part, the American Manufacturing Corporation, and the J. Emil Nelson Corporation. That the party of the first part further agrees to give his services, aid, and assistance in all possible ways for three months each year for three years. That said services shall be given

when needed and demanded at five dollars per day and necessary expenses. That all knowledge that can be given in regard to the machinery necessary in making the staves be given freely and without pay. That all said machines shall be furnished at cost.

"Witness our hands and seals the 28th day of Jany., 1911.

"S. Playford.    [Seal.]

"Witness:                                    J. Emil Nelson.    [Seal.]

  "E. J. Wahl.
  "J. A. Giantvalley."

After this contract was signed, further disputes and controversies arose between Nelson and Giantvalley and Playford, Paul, and Henderson, and there were meetings between them in St. Paul, Minneapolis, and Des Moines, in efforts to settle such controversies or disputes, during which time the contract of November 10, 1911, between Playford and Rammer and L. H. Paul and F. Henderson, of Des Moines, Iowa, was made (No. 3 of the contracts above mentioned).

December 27, 1911, Nelson procured from Giantvalley pursuant to the contract of January 28, 1911, a reassignment to Playford of Giantvalley's rights under the contract of Playford to him of December 24, 1909, which assignment was duly acknowledged by Giantvalley December 29, 1911, and Playford then made to the plaintiff Nelson the contract or agreement of that date (which is No. 5 of the contracts or agreements above mentioned). This contract was made apparently in full settlement of the controversy between Nelson and Playford, growing out of the alleged defects in the cement staves of which the silos at the Agricultural Farm and the State Fair Grounds near St. Paul, Minn., arose, and it is the contention of Nelson that it was made in pursuance of the contract of January 28, 1911, and the real consideration therefor was the settlement of the controversies theretofore arising between them in regard to the alleged defects in the cement staves or blocks that the American Manufacturing Company had made, and which were used in the construction of silos with the assistance and under the direction of Playford, and was in lieu of the $500 mentioned in the contract; that the royalties to be paid were only to be paid after the specified number of staves had been made and sold subsequent to the making of such contract; that the defendant the Cement Stave Silo Company under the contract of February 14, 1912, claimed the right to such royalties, whatever they may be; and that until the right to them is determined he should not be required to pay them. Be this as it may, the acceptance by Nelson of the contract of December 29th, though it is not signed by him, binds him to pay the consideration expressed in that contract, and is a sufficient consideration to support the same. The payment of the consideration is not a condition precedent to the validity of the contract, and his failure alone to pay the same does not under the terms of the contract render it void for want of consideration; and such consideration, if not paid or settled by the parties, may be recovered by Playford from Nelson. The contention, therefore, that the contract of December 29th is void for want of consideration, cannot rightly be sustained.

The contract of February 14, 1912, is no defense to the plaintiffs' action; nor does it afford the defendants any grounds for affirmative

relief against the plaintiffs, for by its express terms it is made subject to the Nelson contract, and the proofs show that Paul and Henderson had actual notice of the Nelson claim when their contract of November 10, 1911, was made. Besides, the Nelson contract of December 29th and the reassignment of the Giantvalley contract to Playford of December 27th (reconveying the full legal title to the patent to Playford) had been recorded in the United States Patent Office January 2, 1912, more than a month before the contract of February 14, 1912.

Of the alleged fraud of Nelson in procuring the contract of December 29th from Playford, it must suffice to say that we have carefully considered the testimony bearing upon this question, and reach the conclusion that it is wholly insufficient to support this defense. It need not be reviewed or further considered.

The District Court held the equities to be with the defendants, upon what ground is not stated, and dismissed the bill with prejudice, at plaintiffs' costs, and added:

"This decree will not be construed as an adjudication of either the validity or invalidity of letters patent No. 850,048, or of any claim thereof."

In dismissing the bill the court erred. Its decree is therefore reversed, and the cause remanded to the District Court, with directions to render a decree for the plaintiffs with costs, and the usual order for an accounting. It is ordered accordingly.

Reversed.